UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MCMILLIN HOMES CONSTRUCTION, INC,<br><br>Plaintiff,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY; INTERSTATE FIRE & CASUALTY COMPANY; AND DOES 1 TO 100, INCLUSIVE,<br><br>Defendants. | Case No.: 20cv-6-JAH-MDD<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS (ECF NO. 8)** |

## I.  INTRODUCTION

Pending before the Court is Defendant Lexington Insurance Company's ("Defendant" or "Lexington") motion to dismiss the complaint. (ECF No. 8). The motion has been fully briefed. (ECF Nos. 8, 16, 17). Having considered the parties' submissions, the Court **DENIES** Defendant's motion to dismiss Plaintiff's complaint.

## II.  PROCEDURAL BACKGROUND

Plaintiff McMillin Homes Construction, Inc. ("MHC" or "Plaintiff") brought a civil action against various defendants on October 4, 2019 in the Superior Court of the State of

California, County of San Diego ("Superior Court"). (ECF No. 1 at 1-2). Plaintiff later filed its First Amended Complaint on December 5, 2019. (ECF No. 1-2 at 13).

On January 2, 2020, Defendant removed the instant matter from Superior Court to this Court. (ECF Nos. 1 to 4). A week later, Defendant subsequently filed a motion to dismiss the complaint for failure to state a claim, along with a request for judicial notice. (ECF Nos. 8, 9). MHC filed an opposition to Defendant's motion to dismiss on February 3, 2020, (ECF No. 16), to which Defendant filed a reply, accompanied by a request for judicial notice and an objection to evidence filed by Plaintiff in support of Plaintiff's opposition. (ECF Nos. 17 to 19).

### III.  FACTUAL BACKGROUND[1]

MHC acted as the general contractor for projects known as "Appaloosa", "Cheyenne", "Rustic Oaks", and "Stallion Springs" (collectively, "the Projects"), each located in Fresno, California. (ECF No. 1-2 at 4). Plaintiff used subcontractors to carry out the various projects and required that its subcontractors and suppliers procure comprehensive general liability insurance, naming Plaintiff as an additional insured with respect to the subcontractor's work on the Projects. (*Id.*). The defendants, including Lexington, issued comprehensive general liability policies (the "Policies") to Plaintiff's subcontractors and suppliers on the Projects, with additional insured endorsements or equivalent terms naming Plaintiff as an additional insured. (*Id.* at 5). Plaintiff's subcontractors have paid all premiums due under the Policies and have otherwise performed their obligations to keep the Policies in effect. (*Id.* at 6).

Sometime after Plaintiff's subcontractors worked on the Projects, several homeowners brought an action against McMillian Rustic Oaks, LLC and Doe Defendants in a state court action (the "Underlying Action") seeking damages arising out of the "alleged property damage caused by negligent and defective work of Plaintiff and its

---

[1] This is a recitation of pleaded facts for purposes of the instant motion to dismiss, and should not be construed as findings of fact.

subcontractors and suppliers on the Project that potentially occurred while the Policies were in full force and effect." (*Id.*).  The Underlying Action named McMillin Rustic Oaks, LLC and Does 1-1000, and specifically reserved Does 201-400 "for the entities that were hired, retained, employed or contracted with persons or entities to provide for labor or materials in the construction of the Projects." (*Id.* at 6).  Plaintiff alleges that it is one of the entities that was "hired, retained and employed by McMillin Rustic Oaks, L[L]C for construction of the projects and served as the general contractor on the Projects."  (*Id.*).

The Underlying Action was later voluntarily dismissed with prejudice.  Lexington allegedly "authorized a settlement on behalf of its insured subcontractor and Plaintiff" in the Underlying Action but "Lexington . . . continues to refuse [] to fund the settlement unless . . . Lexington is given a release of its additional insured defense obligations to Plaintiff."  (ECF No. 1-2 at 10).

Plaintiff made a demand on the defendants for a defense and indemnification in the Underlying Action, and the defendants, including Lexington, "failed and refused."  (ECF No. 1-2 at 7).  Plaintiff requested that the defendants reconsider their decision to deny coverage, but defendants refused.  (*Id.* at 10).

### IV. LEGAL STANDARD

Lexington has moved to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), which tests the legal sufficiency of the claims asserted.  Fed. R. Civ. P. 12(b)(6).  A complaint does not require detailed allegations to survive dismissal; instead, it must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citations omitted).

On a motion to dismiss, the court "accept[s] as true all of the factual allegations set out in plaintiff's complaint, draw[s] inference from those allegations in the light most favorable to plaintiff, and construe[s] the complaint liberally." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). "The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the plaintiff's claim." *U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1121 (C.D. Cal. 2000) (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987)).

## V. DISCUSSION

Lexington moves to dismiss Plaintiff's claim for declaratory judgment, breach of contract, and breach of the covenant of good faith and fair dealing, arguing principally that because MHC was never named in the Underlying Action, Lexington's duty to defend was never triggered. The parties have also submitted various requests for judicial notice, and Lexington has objected to the inclusion of certain documents. The Court will address the requests for judicial notice and objections first, and then turn to the substance of the pending motion.

### A. The Parties' Requests for Judicial Notice and Exhibits

In support of its motion to dismiss, Lexington has asked the Court to take judicial notice of (1) the complaint in the current action filed on October 4, 2019, in Superior Court, (2) the first amended complaint in the current action filed on December 5, 2019 in Superior Court, (3) a certified copy of the complaint filed on February 28, 2017 in Superior Court (the "Underlying Action"), and (4) a certified copy of the Dismissal of Plaintiff's Entire Complaint with prejudice, filed on September 30, 2019 in the Underlying Action. The Court grants those requests. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n.6 (9th Cir. 2006) (explaining that the court can take judicial notice of court filings and other matters of public record).

In support of their reply brief, Lexington has asked the Court to take judicial notice of a certificate of cancellation filed with the California Secretary of State. (ECF No. 18). Civil Local Rule 7.1 "provides that 'copies of all documentary evidence which the movant

intends to submit in support of the motion, or other request for ruling by the court, must be served and filed with the motion." *Do v. Tri City Healthcare Dist.*, No. 19CV2253-MSB (NLS), 2020 WL 6484633, at *2 (S.D. Cal. Nov. 4, 2020) (citing S.D. Cal. Civ. L.R. 7.1(f)(2)(a)). Moreover, "[i]t is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers." *Id.* (citing cases). Accordingly, the Court declines to take judicial notice of the certificate of cancellation.

Separately, Plaintiff has filed a declaration in support of its opposition to Lexington's motion, which itself attaches two exhibits: (1) a "true and correct copy of the 'Agreement for Dissolution and Winding Up of McMillin Rustic Oaks, LLC'" and (2) a "true and correct copy of the 'State of Delaware Certificate of Merger of Domestic Limited Liability Companies'". (ECF No. 16-1 at 2). Lexington has objected to portions of Plaintiff's declaration in support of its opposition, along with the two exhibits. These objections are overruled as moot because this Order does not rely on the objected materials, and the Court declines to take judicial notice of the exhibits for the same reason. *See, e.g.*, *Crosby Est. at Rancho Santa Fe Master Ass'n v. Ironshore Specialty Ins. Co.*, 578 F. Supp. 3d 1123, 1126, n.3 (S.D. Cal. 2022); *Philadelphia Indem. Ins. Co. v. Hollycal Prod., Inc.*, 2018 WL 6520412, at *2, n.1 (C.D. Cal. Dec. 7, 2018); *In re Facebook, Inc. S'holder Derivative Privacy Litig.*, 367 F. Supp. 3d 1108, 1118 (N.D. Cal. 2019).

### B. Plaintiff Has Properly Alleged that Lexington Had a Duty to Defend Plaintiff in the Underlying Action

Plaintiff's first count seeks declaratory relief regarding the "respective rights and duties of the parties with respect to the . . . controversy and the Policies" and "a declaration that Defendants ow[e] a duty to pay for Plaintiff's defense and indemnity in the" Underlying Action. (ECF No. 1-2 at 7). Lexington argues that the count should be dismissed primarily because Rustic Oaks, and not MHC, was the only named defendant in the Underlying Action, and Lexington consequently had no duty to defend MHC. (ECF No. 8). Broadly, Lexington contends that under California law, carriers have "no

obligation to provide a defense to a party not named as a defendant in the underlying case when the subject policy requires the same." (ECF No. 17 at 9).

Plaintiff argues that (1) under California law, the insured is entitled to a defense if the complaint can *potentially* be amended to cover them; and (2) Lexington was provided with sufficient information to determine that MHC was a potential party to the Underlying Action, and therefore, the Underlying Action's failure to mention MHC by name is not fatal. For the reasons noted below, the Court **DENIES** Lexington's motion to dismiss Plaintiff's first count.

a. Duty to Defend Under California Law

Courts have made clear that, in no uncertain terms, the insurer "owes a broad duty to defend its insured against claims that create a potential for indemnity" and that this "duty . . . is so broad that it only requires 'a bare potential or possibility of coverage as the trigger[.]'" *Ironshore*, 498 F. Supp. 3d at 1255 (citations omitted). Under California law, "[a]n insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages potentially covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 289 (1993).

But while the "duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy," the duty also "exists where extrinsic facts known to the insurer suggest that the claim may be covered." *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 655 (2005). Unlike states that have a so-called "eight corners rule"[2] that limits the analysis to the insurance contract and the underlying complaint, "in California[,] facts 'known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy.'" *Doskocil, Inc. v. Fireman's Fund Ins.*

---

[2] *See, e.g., W. Nat'l Assurance Co. v. Wipf*, 702 F. App'x 542, 544 (9th Cir. 2017).

*Co.*, No. C 98-0776 TEH, 1999 WL 430755, at *2 (N.D. Cal. June 17, 1999)[3] (citing *Montrose*, 24 Cal.Rptr.2d at 472).

"Facts tending to show that the claim is not covered, or may not be covered are insufficient to demonstrate that the action will not be covered." *Pro. Sec. Consultants, Inc. v. U.S. Fire Ins. Co.*, 2010 WL 4123786, at *2 (C.D. Cal. Sept. 22, 2010) (citing *Montrose*, 6 Cal.4th at 300). The insurer's burden is to "prove that there can b[e] no conceivable theory [that] raise[s] a single issue which would bring it within the policy coverage." *Id.* (citing *Montrose*, 6 Cal.4th at 300) (internal quotations omitted). Once triggered, the insurer's duty to defend "is not extinguished until the insurer negates all facts suggesting potential coverage." *Scottsdale*, 36 Cal. 4th at 655.

  b. <u>The Allegations in the Underlying Action and the Extrinsic Facts Known to Lexington Establish the Potential for Coverage in the Underlying Action For Purposes of a 12(b)(6) Motion</u>

Courts determine whether the duty to defend is triggered by looking at the language of the complaint in the underlying action, along with extrinsic facts known to the insurer, to determine whether there was a potential for coverage. Here, at the motion to dismiss stage, both the language of the underlying action and the extrinsic facts known to Lexington suggest at least a potential for coverage, especially when considered together.

  *i. The Allegations in the Underlying Action Suggests a Potential for Coverage*

First, as currently pled, the homeowners' complaint in the Underlying Action gave rise to potentially covered claims, which in turn may trigger Lexington's duty to defend.[4] The Underlying Action seeks damages arising out of alleged property damage caused by negligent and defective work on the Projects. (ECF No. 1-2 at 6). Plaintiff is the additional insured on several policies held by its subcontractors, which "promised to defend Plaintiff

---

[3] aff'd, 41 F. App'x 75 (9th Cir. 2002).
[4] The Court makes this conclusion for purposes of this motion to dismiss only; the Court is not making an ultimate finding with respect to the duty to defend.

in any suit against them on account of such property damage, bodily injury, or personal injury." (ECF No. 1-2 at 5-6).

While MHC is not specifically named as a defendant in the Underlying Action, which the Court will address more fully below, the plaintiffs in the underlying action expressly reserved Does 201-400 "for the entities that were hired, retained, employed, or contracted with persons or entities to provide for labor or materials in the construction of the Projects." (ECF No. 1-2 at 6). MHC alleges that it was "one of the entities that was hired, retained and employed by McMillin Rustic Oaks L[L]C for construction of the Projects and served as the general contractor on the Projects." On a motion to dismiss, the Court "accept[s] as true all of the factual allegations set out in plaintiff's complaint, draw[s] inference from those allegations in the light most favorable to plaintiff[.]" *Doe*, 419 F.3d at 1062.

Taking into consideration the language of the complaint in the Underlying Action and its reservation of specific Doe defendants for entities that include MHC, the Court finds that the Underlying Action gave rise to potentially covered claims for purposes of the instant motion.[5]

### ii. Extrinsic Facts Known to Lexington Suggest a Potential for Coverage

Second, in addition to the language of the complaint in the Underlying Action, additional extrinsic facts known to Lexington suggest that the Underlying Action raises potentially covered claims against MHC. Plaintiff alleges that Lexington is the insurance company that provided a number of policies to Plaintiff's subcontractors for the Projects – the same Projects which were named and at issue in the Underlying Action. Given Lexington's knowledge of Plaintiff MHC's involvement in the Projects at issue in the Underlying Action through its additional insured coverage of Plaintiff MHC, it strains credulity to suggest that Lexington, having written policies for Plaintiff's subcontractors

---

[5] *See* footnote 4, supra.

that expressly contemplate MHC as an additional insured for work performed on a specific series of projects, would then claim that there is *no potential* for MHC to be implicated in the Underlying Action.

  c. <u>Case Law Cited in Support of Lexington's Position is Unavailing</u>

Lexington discusses and distinguishes several cases to support its position that carriers have no obligation to provide a defense to a party not named as a defendant in the underlying case. Lexington argues that (1) *Montrose* and *Gray* are distinguishable, (2) that *Gunderson* supports a limited reading of *Montrose* and *Gray*, (3) and that *Western Polymer* and *American Continental Ins.*, among other cases, support their legal position. The Court addresses each in turn.

  *i. The California Supreme Court's Holdings in Montrose and Gray Apply in Support of Plaintiff*

Plaintiff cites to *Montrose* and *Gray* to support their reading of the duty to defend under California law. Lexington argues that *Montrose* and *Gray* are distinguishable because they concern parties that were actually named in the underlying action, and further attempt to cabin these holdings by noting that those cases do not "state that an insurer is obligated to defend an entity that is not a party to the lawsuit if the complaint could be amended to add the insured as a named defendant." (ECF No. 17 at 7). While the cases are silent as to whether an insured is obligated to defend an entity if that entity is not yet a party to the lawsuit, they (1) do not hold that there is *no* obligation to defend where an entity is not yet a party to the lawsuit,[6] and (2) articulate California's broad reading of the duty to defend *potential* claims.

Lexington further argues that reading *Montrose* and *Gray* as imposing an obligation to defend insureds when the insured is unnamed "would expose an insurer to the duty to defend endless insureds that could theoretically become defendants through an amendment

---

[6] In other words, these cases do not make a positive assertion that insurers do not have such an obligation if the insured is unnamed in the case.

to the underlying complaint." (ECF No. 17 at 7).  The Court disagrees.  As the *Gray* court notes, the "nature and kind of risk covered by the policy" is "a limitation upon the duty to defend[.]" *Gray,* 65 Cal.2d at 275.  Moreover, future policy holders must still establish that the language of the underlying action raises the potential for coverage for that specific policy holder, for an event covered by a policy.  Finally, this is not a case where a seemingly entirely unrelated insured is seeking a defense because they *might* be added to a suit.  The Court finds that Plaintiff's relationship with defendants in the underlying action is ***expressly*** described in the lawsuit and that plaintiffs in the Underlying Action have ***expressly*** reserved several of the Doe defendants for persons in MHC's capacity.

### ii. Gunderson Does Not Support Lexington's Position

The primary case[7] cited in Lexington's motion to dismiss in support of its limited reading of *Montrose* and *Gray*, *Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106 (1995), does little to bolster Lexington's position in the instant case.[8]  The Court in *Gunderson* explained that insureds "may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Id.* at 1114.  The *Gunderson* court then explained that "the insured may not speculate about unpled third-party claims to manufacture coverage." *Id.* (citation omitted).  The court then operationalized these rules by framing the inquiry as: "what facts respondent knew at the time appellants tendered the defense of the [underlying] lawsuit, both from the allegations on the face of the third-party

---

[7] Lexington also cites other cases in support of their larger proposition that insurers are not obligated to defend when the insured is not named in the underlying action in their reply brief, which the Court addresses below.

[8] The Court also notes that the first footnote in *Gunderson* explains that "[p]ursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III and IV." Lexington quotes from section IV of the opinion, one of the expressly unpublished sections.

complaint, and from extrinsic information available to it at the time; and whether these known facts created a potential for coverage under the terms of the Policy." *Id.*

Applied to the instant case, Plaintiff is not "speculat[ing] about unpled third-party claims"; rather, Plaintiff argues that it is one of the unnamed Doe defendants implicated by the claims *actually pled* in the underlying action. The relevant inquiry is, as noted by the *Gunderson* court, what facts Lexington knew at the time of tender, both from the face of the complaint and extrinsic information available to it. As discussed above, the facts in the complaint, when taken together with the extrinsic information available to Lexington, raises at least the *potential* for coverage, which in turn triggers Lexington's duty to defend.

> iii. Western Polymer and the Other Cases Cited by Lexington in Support of Their Primary Proposition Are Distinguishable

In their reply brief, Lexington cites to three cases that they contend support the proposition that an insurer is not required to defend the insured unless they are expressly named in the suit: *Western Polymer, Am. Cont'l Ins. Co. v. Am. Cas. Co.*, and *Spencer*. Of these cases, *Western Polymer* is most on-point, though distinguishable.[9] There, the court rejected the alleged insured's claim that the insurer had a duty to defend "when a suit potentially seeks damages within the policy's coverage" because the plaintiff in the underlying action "could have amended its action to name [the alleged insured]." *W. Polymer Tech., Inc. v. Reliance Ins. Co.*, 32 Cal. App. 4th 14, 28 (1995). More specifically, the alleged insured argued that he was covered because the underlying action was directed towards his company, and that the underlying plaintiffs "could have amended [their] action to name him as a defendant or sought to enforce any judgment against him as [his company's] alter ego." *Id.* at 28.

---

[9] *Am. Cont'l Ins. Co. v. Am. Cas. Co.*, 86 Cal. App. 4th 929, 932 (2001), as modified (Feb. 1, 2001), as modified (Feb. 7, 2001), as modified (Feb. 16, 2001) arises in the context of a dispute regarding equitable contribution.

While at first glance, the plaintiff's argument in *Western Polymer* appears to be the same argument presented by MHC, they differ in one important respect: here, unlike *Western Polymer*, MHC is claiming that the allegations in the Underlying Action **already** refer to MHC by way of reference to the contractors for the Projects and the specific reservation of Doe defendants. The insured in *Western Polymer* did not argue that he was **already** referred to in the underlying action, just that he **might** be added to the suit given his relationship to the already-named defendant.

*Spencer* is similarly distinguishable and less applicable to the present case. There, the plaintiff brought an action against his insurer for refusing to defend him in an underlying action regarding a car accident involving he and his wife. *Spencer v. State Farm Mut. Auto. Ins. Co.*, 152 Cal. App. 2d 797, 798 (1957). That action "was commenced against [plaintiff] . . . and his wife", but plaintiff "was not served with summons." *Id.* The insurer defended plaintiff's wife, but not plaintiff, who then sued the insurer for its refusal to defend. The court concluded that because plaintiff "was never served with summons . . . the duty to appear did not devolve upon him." *Id.* at 799. Unlike the present case, plaintiff *Spencer* was decided in part because of the absence of a summons – and plaintiff was named in the underlying action. Accordingly, the Court finds that *Spencer* does not support the ultimate proposition that an insurer never has the duty to defend an insured when it is discussed, but not expressly named, in the underlying action.

### d.  MHC Has Sufficiently Pleaded a Duty to Indemnify

Plaintiff also requests declaratory relief regarding the status of Lexington's duty to indemnify Plaintiff. The "duty to indemnify and the duty to defend are not coterminous", with the former arising "only where a judgment has been entered against the insured on a theory which is actually (not potentially) covered by the policy." *Sodexo Mgmt., Inc. v. Old Republic Ins. Co.*, 2021 WL 254240, at *10 (S.D. Cal. Jan. 26, 2021) (internal quotations omitted) (citing *Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 958 (2001); *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 803 (1994)). Where the "case settles prior to trial, the duty to indemnify must be determined

on the basis of the settlement, *i.e.*, the undisputed facts set forth in the underlying complaint and those known to the parties." *Archer W. Contractors, LTD v. Liberty Mut. Fire Ins. Co.*, No. CV143041DMGMANX, 2015 WL 11004493, at *5 (C.D. Cal. Mar. 31, 2015), (citing *Sentry Select Ins. Co. v. Royal Ins. Co. of Am.*, 481 F.3d 1208, 1215 (9th Cir. 2007)).

Here, the Underlying Action settled before trial. Lexington allegedly "authorized a settlement on behalf of its insured subcontractor and Plaintiff" in the Underlying Action but "Lexington . . . continues to refuse [] to fund the settlement unless . . . Lexington is given a release of its additional insured defense obligations to Plaintiff." (ECF No. 1-2 at 10). For purposes of the pending motion to dismiss, construing the facts in the light most favorable to the non-moving party, the Court finds that Plaintiff's request for declaratory relief regarding the duty to indemnify is sufficiently pleaded.

**C. Plaintiff Has Properly Pleaded a Breach of Contract and "Bad Faith" Claim**

Plaintiff alleges that Lexington has committed a breach of contract by declining to defend or indemnify MHC in the Underlying Action. Lexington has moved to dismiss the claim, arguing that Plaintiff has failed to properly allege that Lexington breached the terms of the policies because it was never required to defend Plaintiff unless Plaintiff was the subject of a suit. (ECF No. 8 at 10). To establish a claim for a breach of contract, plaintiffs must generally allege (1) the existence of a contract, (2) plaintiff's performance of or excuse for non-performance, (3) defendant's breach, and (4) damages. *Durell v. Sharp Healthcare*, 183 Cal.App. 4th 1350, 1367 (2010). In the insurance context, a "[b]reach of an insurer's duty to defend violates a contractual obligation and, where unreasonable, also violates the covenant of good faith and fair dealing, for which tort remedies are appropriate." *Amato v. Mercury Casualty Co.*, 53 Cal. App. 4th 825, 831 (1997) (citing *Campbell v. Superior Court*, 44 Cal. App. 4th 1308, 1320 (1996)).

For the reasons discussed above, the Court finds that the Underlying Action and the extrinsic facts known to Lexington triggered its duty to defend Plaintiff at this stage of the proceeding. Plaintiff's operative complaint also alleges the existence of the additional insured contracts, the performance by its subcontractors under those contracts, and

resulting damages. Because Lexington raises no other argument in support of its motion to dismiss the breach of contract claim, and because Plaintiff has otherwise pleaded the requisite elements, the Court **DENIES** Lexington's motion to dismiss Plaintiff's breach of contract claim.

Similarly, Plaintiff alleges that Lexington has acted in bad faith by declining to defend or indemnify MHC in the Underlying Action, despite "kn[owing] there was a potential for coverage . . . and denied a defense anyway in conscious disregard of" Plaintiff's rights under the policies. (ECF No. 1-2 at 9). Lexington moves to dismiss the claim, arguing that because there was no underlying contractual obligation, there was no bad faith conduct by Lexington. As with the breach of contract claim, the Court disagrees with Lexington and finds that, for purposes of the motion, the duty to defend was triggered by the Underlying Action.

Under California law, a "covenant of good faith and fair dealing is implied in every insurance contract." *Pro. Sec. Consultants, Inc.*, 2010 WL 4123786, at *4 (citing *Jordan v. Allstate Ins. Co.*, 148 Cal.App.4th 1062, 1073 (2007)). "Where an insurer denies coverage but a reasonable investigation would have disclosed facts showing the claim was covered, the insurer's failure to investigate breaches its implied covenant." *Id.* at 4 (citing *Jordan*, 148 Cal.App.4th at 1074). An insurer's unreasonable refusal to defend may constitute bad faith. *See Amato*, 53 Cal.App4th at 831(citation omitted). Here, as pleaded by Plaintiff, the insurer has denied coverage, but a reasonable investigation into the language of the complaint, and into Lexington's own files, may have disclosed facts showing that the claim was covered. Accordingly, the Court finds that, when construing the pleadings in the light most favorable to Plaintiff, Plaintiff has sufficiently alleged a bad faith claim, and therefore **DENIES** Lexington's motion to dismiss Plaintiff's bad faith claim.

///
///
///

## VI. CONCLUSION

For the foregoing reasons, Defendant Lexington's motion to dismiss the complaint is **DENIED**.

**IT IS SO ORDERED.**

DATED: September 1, 2022

_____
HON. JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE